Evelyn McCONNELL and Floyd Ray Addy, Plaintiffs-Appellants,

v.

GENERAL TELEPHONE COMPANY OF CALIFORNIA, et al., Defendants-Appellees.

Nos. 85–6352, 85–6354.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1986.

Decided April 10, 1987.

Ida L. Campbell-Thomas, West Covina, Cal., for plaintiffs-appellants.

Mark Sullivan, Thousand Oaks, Cal., for defendants-appellees.

Before REINHARDT and HALL, Circuit Judges, and MUECKE,* District Judge.

MUECKE, District Judge:

Evelyn McConnell and Floyd Ray Addy appeal from the district court's grant of summary judgment in each of their actions concerning age discrimination. These matters were consolidated for appeal due to the related nature of the facts and the parties. McConnell's action was dismissed for her failure to exhaust administrative remedies, the district court finding that she had thwarted the statutory scheme set out by EEOC for conciliation. Addy's action was dismissed based upon the running of the three-year statute of limitations set forth in 29 U.S.C. § 626. We reverse the trial court's ruling in both matters.

### FACTS

*Evelyn McConnell*

Plaintiff/Appellant was employed with the defendant/appellee as a drafter in 1964

---

* Honorable Carl A. Muecke, Senior United States District Judge, District of Arizona, sitting by designation.

and in 1977 was upgraded to the management position of "Design Artist I." She retired in November 1982 pursuant to an incentive plan for early retirement. During her employment, she was reprimanded several times for her excessive absenteeism and placed on disciplinary follow-up during 1980–81. During the latter years of her employment, plaintiff contends that although she was classified as a Design Artist I, her work consisted mainly of work performed by those in the position of Design Artist II.

Appellant contends that positions for Design Artist II were opened and filled during May and July of 1981 and that despite her qualifications for the position and her performance of those tasks in her present position, she was not considered for the openings. She contends that she became aware of the reasons that she was not considered for the openings on June 2, 1982, and filed a charge with the California Department of Fair Employment and Housing ("DFEH") on July 6, 1982. She was over the age of forty-five at the time of filing the charge and was represented by counsel. On the same day, appellant requested that the DFEH withdraw her charges.

Appellant contends that the DFEH granted her a "right-to-sue" letter on July 19, 1982, although the DFEH did not close its file on this matter until July 23, 1982, indicating that appellant had "elected court action." On July 20, the appellant filed suit in Los Angeles County Superior Court alleging discrimination on the basis of sex and age, breach of employment agreement, wrongful interference with a business relationship, breach of covenant of good faith and fair dealing in violation of California Labor Code § 1197.5 and intentional infliction of emotional distress.

On May 24, 1984, appellant filed suit in the U.S. District Court, Central District, alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621–34. After denying a motion to dismiss on October 9, 1984, on the basis that there was evidence of continuing violations, the district court granted appellee's motion for summary judgment on September 23, 1985, finding that the appellant had failed to exhaust her administrative remedies. He also dismissed all pending state law claims. Appellant's state court discrimination action still remains. A judgment for dismissal in this action was filed on October 30, 1985. Appellant filed timely notice of appeal on December 2, 1985.

*Floyd Ray Addy*

This plaintiff-appellant was also employed in the graphic department of the defendant-appellee General; however, he was in the position of Design Artist II at the time of his termination. He was employed with the appellee since 1972, beginning as a "Technical Illustrator" and then upgraded to Design Artist II in 1977. Although his evaluations were "good" during the majority of his employment, they fell to "fair" or "at minimum expectations" during the latter portion of his time with General. On May 7, 1980, appellant received an unfavorable review, at which time he advised the EO Department of General (an internal agency set up by the company to investigate claims of discrimination) that his supervisors were attempting to force him to retire at age sixty-five. On July 3, 1980, appellant filed a formal complaint with the EO Department, leading to several interviews with the appellant, his supervisors, and members of the EO Department.

On December 17, 1980, appellant's sixty-fifth birthday, he received a disciplinary memo dated December 5, 1980, indicating dissatisfaction with appellant's work and providing for a review in ninety days. The memo also indicated that if his performance did not improve during this time, he would be reclassified to a level more commensurate with his skills (or released if no vacancy existed). During the following ninety days, appellant made several serious errors in his employment and in February 1981, one of his supervisors offered appellant another position, indicating that it was his "last chance." Appellant did not respond to the offer.

On March 16, 1981, appellant filed discrimination charges with DFEH, Appellant was informed on March 20, 1981, that his

work was not up to the accepted levels of performance and that he would have to find another position in General by April 20, 1981, or would be released. Appellant left work on April 20th and brought a state court action on October 20, 1982. He obtained his right-to-sue letter from the EEOC on June 13, 1983, and brought an action in the district court on April 16, 1984.

After denying a motion to dismiss in this matter on October 9, 1984, based upon a finding of continuing violations, the district court granted a subsequent motion for summary judgment on September 23, 1985, grounded on the running of the statute of limitations. The court also dismissed all pendent state law claims. Appellant's action in state court still remains. Appellant filed a timely notice of appeal on October 2, 1985.

### ISSUES PRESENTED

1. Did the district court err in dismissing McConnell's ADEA action for failure to exhaust administrative remedies where McConnell filed and then "withdrew" her state administrative claims by prematurely requesting and obtaining a right-to-sue letter.

2. Did the district court err in dismissing Addy's ADEA complaint as untimely because the statute of limitations had run?

### DISCUSSION

### STANDARD OF REVIEW

We review a district court's decision to grant summary judgment *de novo, see Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir. 1983), and affirm such a decision if, viewing the evidence presented in the light most favorable to the nonmovant, there exists no genuine issue of material fact and the movant is entitled to prevail under its claim. *See Friends of Endangered Species, Inc., v. Jantzen,* 760 F.2d 976, 981 (9th Cir.1985).

### EXHAUSTION OF ADMINISTRATIVE REMEDIES—McCONNELL

Pursuant to the provisions of the ADEA concerning the right to bring such actions, 29 U.S.C. § 626(d) provides:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which [29 U.S.C. § 633(b)] applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

In the McConnell case, appellant filed charges with the DFEH on July 6, 1982, immediately requesting a right-to-sue letter from the DFEH on July 19, 1982. She then filed an action in state court on July 20, 1982, only fourteen days after filing charges. Subsequently, appellant brought an action under the ADEA, 29 U.S.C. § 621, et seq., in federal district court after receiving her right-to-sue letter from the EEOC. In considering these facts, the district court found that the appellant had frustrated the statutory structure for the filing of such claims by illegally withdrawing her claim from the DFEH. The court further found that the EEOC'S adoption of the state agency's finding, which in this case amounted to nothing because the DFEH had made no finding, was the result of mistaken conduct, precluding the existence of jurisdiction in federal court.

Appellant disputes the district court's decision on several grounds. First, relying upon our previous decision of *Carter v. Smith Food King,* 765 F.2d 916 (9th Cir.1985), she correctly points out that the fact that she requested a right-to-sue letter prior to the expiration of the time period for review does not lead to the conclusion

that appellant has failed to exhaust her administrative remedies. *Id.* at 923. Further, "[t]he administrative agency's right-to-sue letter is entitled to a presumption of regularity." *Id.* Finally, *Carter* also states that "when a state agency charged with administering a particular statute determines that an individual has the right to sue under that statute and so informs him, the claimant may justifiably rely on the agency's representation, even if the state agency is in error." *Id.* at 924. *See also Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 762–65, 99 S.Ct. 2066, 2074–76, 60 L.Ed.2d 609 (1979) (holding that although state action must be sought prior to bringing suit under the ADEA, it was sufficient to simply file a complaint with that commission and the fact that it might be denied for failure to comply with state procedural guidelines was of no consequence); Annot., 56 A.L.R.Fed 627 (1982).

Accordingly, any notion that the state agency acted in error in providing the appellant with a right-to-sue letter immediately after charges were filed is foreclosed on the basis of *Carter* and *Oscar Mayer,* as long as appellant did file her complaint with the state agency.

■ While it is clear under *Carter* that appellant could properly seek relief under the state code upon receipt of the DFEH right-to-sue letter, there is no authority on the effect of those actions upon the requirements of ADEA, namely the sixty-day waiting period. Appellant contends that pursuant to EEOC regulation 29 C.F.R. § 1626.10(c), the filing of a charge with one agency is "deemed" to be a filing with both (i.e., the state agency and the EEOC). Under this rationale, the filing with DFEH on July 6, 1982, was effective for the EEOC filing and the waiting period in 29 U.S.C. § 626(d)(2) ran from the date of the receipt of the right of refusal letter from DFEH. Further, appellant contends that by the time that she had filed her federal action almost two years later, the EEOC had been given sufficient time for conciliation and had properly issued a right-to-sue letter.

A literal reading of § 626(d) supports appellant's position. In the instant case,

appellant did not bring an action "under this section" [29 U.S.C. § 626] until after the EEOC had issued a right-to-sue letter. This action would then be in accordance with § 626(d). The fact that she previously filed a state court action under a state statute does not alter this result, as the state commission was given the opportunity to investigate prior to the filing of that action. Accordingly, as both the state and federal court actions were properly filed, the two actions combined do not "frustrate the statutory scheme."

Appellee's citations to authority on this issue are not to the contrary. For example, several circuits have found that the sixty-day period in § 626(d) is jurisdictional and the failure to comply should result in the dismissal of the action. *See Vance v. Whirlpool Corp.,* 707 F.2d 483, 489 (4th Cir.1983), *cert. denied* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984); *Wright v. State of Tennessee,* 628 F.2d 949, 953 (6th Cir.1980) (en banc); *Reich v. Dow Badische Co.,* 575 F.2d 363, 367–68 (2d Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978); *Cannon v. University of Chicago,* 559 F.2d 1063, 1076–77 (7th Cir.1976), *rev'd in part and remanded on other grounds,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Nevertheless, there has been no showing that appellant failed to comply with this requirement.

■ Appellee does make several contentions in regard to this disposition. First, it argues that a state court action may have broader remedies than those available under ADEA, citing *Kelly v. American Standard, Inc.,* 640 F.2d 974, 983 (9th Cir.1981), and correctly points out that a state court determination on the claims contained in the appellant's state court complaint would bar a subsequent federal suit on the same issues. *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 485, 102 S.Ct. 1883, 1899, 72 L.Ed.2d 262 (1982). Nevertheless, this court need not address this claim. The potential for *res judicata* or collateral estoppel is only speculative, at best, as the state court action has not concluded. Until such time as these doctrines

are applied to the parties, this matter is not ripe for consideration by this court.

Appellee further contends that the filing of the charge with DFEH should not be deemed a filing with the EEOC under the circumstances present here notwithstanding the EEOC regulation which provides for this result, 29 C.F.R. § 1626.10(c). General cites two Fifth Circuit decisions which hold that filings with other agencies do not constitute filings with the EEOC. *See Taylor v. General Telephone Co.*, 759 F.2d 437, 440–42 (5th Cir.1985); *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295, 1303–4 (5th Cir.1979). These decisions are distinguishable from the case at hand in a critical respect. In *Taylor* and *Chappell*, the states involved were not deferral states utilizing work sharing agreements.

The facts involved herein occurred in California, a deferral state under the ADEA. A deferral state is one to which the EEOC has agreed to defer cases for preliminary investigation; here the agency is the DFEH. When a deferral agreement exists, the regulation regarding simultaneous filing, 29 C.F.R. § 1626.10(c), will be enforced. *See Stearns v. Consolidated Management, Inc.*, 747 F.2d 1105, 1112–14 (7th Cir.1984); *Stoecklein v. Illinois Tool Works, Inc.*, 589 F.Supp. 139, 144–45 & n. 7 (N.D.Ill.1984). Enforcement of the regulation is consistent with the idea that

> [t]he ADEA is humanitarian legislation that should not be construed in a hypertechnical manner. Under the ADEA the wheels of justice are set in motion by laymen, and we are loath to adopt a reading of the ADEA that makes this task any more difficult than it already is.

*Stearns*, 747 F.2d at 1112. Use of the regulation avoids the unnecessary burden and duplication of filing separate claims with both the state and federal agencies. It also encourages reliance upon work sharing agreements, resulting in a reduction of the strain placed upon these agencies to meet the overwhelming demands for investigation.

■ In light of the above discussion, appellee's argument against the use of the regulation is unpersuasive. Therefore, the district court was erroneous in holding that appellant had not exhausted her administrative remedies as required by 29 U.S.C. § 626(d) and had thwarted the statutory scheme. Accordingly, the trial court's ruling on this matter is reversed and the case remanded for further proceedings.

### STATUTE OF LIMITATIONS—ADDY

Appellant Addy was required to bring his action for alleged violations of ADEA within three years of the violative acts. *See* 29 U.S.C. § 626(e)(1), incorporating by reference 29 U.S.C. § 255(a). At the hearing on the motion to dismiss, the court found that "[appellant] was told clearly and indisputably that he was going to be terminated ... at least as early as March 20, [1981]." His federal court action was not filed until April 16, 1984, more than three years after the occurrence of the events giving rise to his claims.

Appellant challenges the district court's findings, claiming that the letter of March 20, 1981, to which the judge was obviously referring in his discussion on the motion, contained equivocal language and was not sufficiently definite. On December 17, 1980, appellant received a disciplinary memorandum which indicated, in part, that if he did not improve the quality of his work, he would "be reclassified to an available position more commensurate with [his] skill level. If no vacancy exists, [he] may be released." A subsequent letter on March 20, 1981, indicated the following: "[Y]ou are given until April 20, 1981, to find a position within the company for which you may be qualified. If you fail to find placement by that time, you will be released from employment with General Telephone Company." Appellant contends that this language is similar to that addressed in the matter of *Verschuuren v. Equitable Life Assurance Society of the United States*, 554 F.Supp. 1188 (S.D.N.Y. 1983). In that case a letter was given to an individual which indicated that his job had been abolished and that if he was not placed in another position with the company, he would be terminated. However,

that letter differs from the March 20th letter herein in that it contained the following statement: "Please be assured that every reasonable effort will be made to place you in a position...." 554 F.Supp. at 1190 n. 1.

In making the determination of the appropriate filing date for complaints of this nature, this court follows the guidelines as set forth in *Boyd v. United States Postal Service*, 752 F.2d 410, 414 (9th Cir.1985) (citations omitted):

> The time for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonable prudent regard for his rights.

In the present case, appellant argues that he was misled by General in regard to his termination. He claims that while the EO Department was actively providing him with reassurances, in reality they were actively working with others in General to terminate him.

 Although Addy admitted in his deposition that those alleged reassurances ended upon Addy's receipt of the March 20, 1981 letter, he also stated that he believed that the EO Department would notify him at home concerning the new position that they were trying to locate for him at General. Representations of possible alternative employment within the company may toll the statute of limitations under the doctrine of equitable estoppel when the representations lull the employee into an untimely filing. *See Aronsen v. Crown Zellerbach*, 662 F.2d 584, 595 & n. 22 (9th Cir.1981) (citing cases), *cert. denied*, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431 (1983); *see also Cooper v. Bell*, 628 F.2d 1208, 1214 (9th Cir.1980) (listing elements of estoppel in Title VII action). The reasonableness of appellant's reliance upon these alleged reassurances is a matter not properly decided in the first instance by this court. *See Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir.1981).

 Similarly, there are material factual issues relating to whether a person meeting the *Boyd* test would have considered the March 20 letter an act of termination. On its face the letter purports to offer appellant the opportunity to remain in the employ of the company, albeit in a different position and only upon a condition that might well prove illusory. Although the letter may be sufficient to put an individual on notice as to *some* act of discrimination, it is far from clear that it was sufficient to give appellant notice of his actual termination. The statutory period for complaining of a discriminatory termination does not begin to run until the employee has sufficient notice of that specific act. Notice of other discriminatory conduct such as a possible transfer or demotion ordinarily is not enough to start the statute running on a claim of unlawful discharge. *See, e.g. Aronsen*, 662 F.2d at 593.

 Turning to Addy's claim that General refused to find him another position within the company in retaliation for the charges he filed with the DFEH, we find that there remains a question of fact regarding the date on which this claim accrued under *Ricks*. General presented evidence that Addy was offered an alternative position within General, and informed on February 23, 1980, that if he did not take the alternative position no other positions would be offered. As noted above, however, Addy testified at his deposition that the representations of alternative employment within General by the EO Department continued until the time of his termination, and that he believed even after his termination that the EO Department would find him an alternative position. Under these circumstances there remains question of fact regarding when Addy received notice of General's decision not to offer him alternative employment.

## CONCLUSION

In regard to the McConnell matter, this court finds that appellant did exhaust her administrative remedies prior to bringing her federal cause of action without "frustrating the statutory scheme." Accordingly, the decision of the district court is REVERSED, the entry of judgment is VA-

CATED, and this matter is REMANDED to the district court for further proceedings.

The district court's decision in Addy is also REVERSED based upon the existence of genuine issues of material fact concerning appellant's reliance upon alleged assurances by appellee's EO Department, and the date on which Addy's retaliation claim accrued. Therefore, the judgment in this matter is VACATED and the action REMANDED for further consideration in accordance with this disposition.

In addition, as the district court dismissed the state law claims in each of these actions on the basis that no federal cause of action remained, these claims are to be reinstated upon remand of these matters, subject to the defenses available to General in that regard.[1]

---

**1.** Appellants' briefs discuss the possibility of tolling the statute of limitations in Title VII actions. However, the amended complaints in both of these actions neither seek relief from Title VII nor contain any allegations or citations concerning Title VII. As the complaints do not raise these issues, we need not address whether any such claims could be barred by the statute of limitations.

General argues that we should affirm the grant of summary judgment by reviewing the merits of appellants' claims even if we find that the district court erred in the reasons it asserted in dismissing the claims. We decline this offer, leaving consideration of the appropriateness of summary judgment on the merits of the claims presented to the district court.