Cratsley, J.
INTRODUCTION
The defendants are the trustees of a condominium (‘Trustees”) where the plaintiffs own two units. This action arises out of the defendants’ refusal to allow the plaintiffs to construct a non-bearing wall within their units, converting a dining area into two separate rooms. Plaintiffs’ complaint alleges ten counts including libel, intentional interference with a contractual relationship, intentional interference with a advantageous relationship, intentional interference with a prospective economic advantage, breach of fiduciary duty, intentional infliction of emotional distress, fraud, injurious falsehood, breach of contract, and negligence. The plaintiffs move for partial summary judgment against the defendants arguing that as a matter of law nothing in the Condominium Master Deed, the Declaration of Trust, the Condominium Rules or any other applicable law forbids the plaintiffs from converting the dining area into two separate rooms, thus creating the potential for a three-bedroom unit. Therefore, the plaintiffs assert that as a matter of law the Condominium Trustees must approve the plaintiffs’ plans to convert the dining area into a separate room.
For the reasons discussed below, the Plaintiffs’ Motion for Partial Summary Judgment is ALLOWED.
FACTUAL BACKGROUND
The following facts are taken from the summary judgment record. Plaintiffs Edward and Svetlana Yankovski (“Yankovskis”) own Unit 3 in the Chestnut Manor Condominium which they purchased on March 9, 2004. Plaintiff E&S owns Unit 9 in the Condominium which it purchased on or about February 25, 2002. The Yankovskis are General Partners of E&S. See Affidavit of Valentin Gurvits, exhibit A, Verified Complaint pp. 3 (“Verified Complaint”).
Both Units 3 and 9 have open dining areas adjacent to the kitchen. In February 2002, the Yankovskis decided to erect a non-bearing wall, French door, and a closet in the dining area of Unit 9 to create a new, enclosed room.[4] Id. at 3-4. In February 2004, when the Yankovskis purchased Unit 3, the Trustees sent them a letter notifying the Yankovskis that the work they had done in Unit 9 required written approval by the Condominium Trustees.[5] Id. at 6. The Yankovskis sent their plans and specifications for the work done in Unit 9 to the Trustees. Id. The Trustees refused to acknowledge that the Yankovskis had permission to build a wall in Unit 9, and refused to permit the conversion of the dining area into a separate room in Unit 3. Id. at 8-9. In considering and discussing the Yankovskis’ requests, the Trustees refused permission, believing that an additional bedroom would result in subsequent conversions of other units in the Chestnut Manor Condominium to three-bedroom units, thus resulting in more tenants and greater wear and tear to the common areas. The Trustees also indicated concern that additional residents would create parking problems. See Affidavit of John F. Rowley, pp. 2.
DISCUSSION
Summary judgment is granted where there are no issues of material fact and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the moving party is entitled to a judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment not bearing the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); *432 Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). A moving party can meet its burden by showing the non-moving party lacks evidence to support the non-moving party’s case. See Kourouvacilis, 410 Mass, at 711. Once the moving party meets that burden, the non-moving party must show by admissible evidence that there does exist a dispute as to material facts. Id. (citing Godbout v. Cousens, 396 Mass. 254, 261 (1985)). A non-moving party plaintiff must set forth specific facts showing the existence of an issue for trial. Id. (citing Mass.R.Civ.P. 56(e)); Wheatley v. American Telephone & Telegraph Co., 418 Mass. 394, 397.
The Yankovskis seek partial summary judgment which would declare that as a matter of law (1) the Condominium Master Deed, the Condominium Declaration of Trust, and the Condominium Rules do not forbid conversion of a two-bedroom unit into a three-bedroom unit, and (2) these same documents specifically allow the erection of non-bearing walls within an owner’s unit. Therefore, plaintiffs seek a declaratory judgment that the Condominium Trust must approve the Yankovskis’ plans to create a third bedroom in their units.[6] See Memorandum in Support of Plaintiffs’ Motion for Partial Summary Judgment.
Reviewing condominium law around the country, this Court finds that two categories of cases exist in which a condominium association enforces rules of restrictive use. Hidden Harbour Estates, Inc. v. Basso,[7] 393 So.2d 637, 639 (Fla. 4th DCA 1981). The first category involves the enforcement of restrictions within the condominium declaration. Id. The second category involves the validity of a rule promulgated by the condominium association’s board, or the refusal of the board to grant a specific use, when the board retains the discretion to allow or deny that particular use. Id. This case specifically involves the latter category-
In this case, the Condominium Declaration of Trust states that the Trustees’ approval of an owner’s plans to change the inside of a unit “shall not be unreasonably withheld or delayed.” See Verified Complaint, exhibit B, Condominium Declaration of Trust§5.2.3, pp 11. The rule of “reasonableness” is the preferred standard in the second category of cases, particularly when a condominium association board’s approval or denial of a specific use is the issue. See Basso, 393 So.2d at 640.[8] The purpose of the “reasonableness” standard is to “somewhat fetter the discretion of the board of directors.” Basso, 393 So.2d at 640. The defendants argue that use restrictions in condominium documents enjoy a very strong presumption of validity, and thus are valid absent a showing “that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right.” See Defendants’ Memorandum in Opposition to Plaintiffs’ Motion for Partial Summary Judgment, pp. 4-5.[9]
In arguing that the law upholds a certain degree of unreasonableness, the defendants rely heavily on the Massachusetts Appeals Court decision, Noble v. Murphy, 34 Mass.App.Ct. 452 (1993). While the defendants properly interpret Noble, they nonetheless misapply that decision to this case. Noble dealt with a pet restriction contained in the originating documents. See generally Noble, 34 Mass.App.Ct. 452. A restriction in an originating document does in fact cany a strong presumption of validity. See Basso, 393 So.2d at 639. Use restrictions found in the declaration of condominium are, however, in the first category of use restrictions enforced by a condominium association as described in Basso. As previously mentioned, this case involves the second category of use restrictions, those in which the Condominium Trustees have discretion to allow or disallow unit owners’ planned alterations to their condominium units. The reasonableness standard is therefore, appropriate in this case. In fact, the Declaration of Trust states explicitly that the Trustees have discretion within the bounds of reasonableness.
The District Court of Appeals of Florida, in Basso, interpreted the reasonableness standard to mean that a board is required to make decisions that are reasonably related to the promotion of health, happiness and peace of mind of the unit owners. Id. at 640. The court stated that generally a condominium board must allow the use unless it is “demonstrably antagonistic to the legitimate objectives of the condominium association.” Id. In Basso, the condominium board of directors denied owners permission to drill a well for three reasons including, (1) the threat of increased salinity, (2) the threat of staining of sidewalks and common areas, and (3) the proliferation of more wells by other unit owners. Id. at 638. The Florida court acknowledged that the board’s reasons for denial were legitimate and in the best interests of the unit owners, but nonetheless held that Hidden Harbor Estates was not entitled to an injunction to stop the owner’s drilling a well because the board was not able to demonstrate that the denial was “reasonably related to the fulfillment” of health, happiness and peace of mind of the unit owners. Id. at 640-41.
This case presents a similar situation. The Yankovskis seek the Trustees’ approval to build a non-bearing wall within their units in order to create a third bedroom in each unit. The Trustees’ stated reasons for denying approval are related to maintenance costs, deterioration of the common areas, and parking problems if more tenants move into the building.[10] See Affidavit of John F. Rowley, pp. 1-2. No matter what the number of bedrooms in each unit, however, the number of unrelated people permitted to live in each unit is capped by the Master Deed.[11] The Trustees do not point to any evidence in the summary judgment record that approval of the Yankovskis unit alterations will significantly increase the number of tenants in the condominium. The Trustees also offer *433 no tangible evidence demonstrating the Yankovskis’ project will significantly impact maintenance costs or cause denigration of the common areas, nor do they propose to show that other unit owners have actually sought to increase the number of bedrooms in their units. While the Trustees’ broad reasons for denial appear on the surface to promote the interests of the unit owners and articulate legitimate concerns, as in Basso, the Trustees fail anywhere in the summary judgment record to factually demonstrate a “reasonable relationship” between their denial of approval and the objectives of health, happiness and peace of mind of the unit owners.
While the leading case, Basso, contains a discussion of a “reasonableness” standard in the context of aboard denying approval for an owner’s plan for a well, the Declaration of Condominium in that case does not contain the actual “reasonableness” language found in this case.[12] In this Court’s view, the text of the “reasonableness language” in this case only adds to the burden on the defendants’ to justify denying the plaintiffs’ plans. The defendants have not met this burden with any tangible evidence in the summary judgment record.
Therefore, as a matter of law, this Court holds that the Trustees’ unreasonably withheld approval in violation of the condominium Declaration of Trust.
ORDER
For the reasons discussed above, the Plaintiffs’ motion for partial summary judgment is ALLOWED. Plaintiffs shall submit to this Court with notice to the defendants, a proposed form of Partial Summary Judgment.

The plaintiffs allege that Mr. James Rowley, a Trustee of the Condominium Trust, gave them verbal permission to create the new room, denying their need for written permission. See Verified Complaint, pp. 5. Mr. James Rowley denies he granted verbal permission to the Yankovskis, and denies ever having had a conversation with Mrs. Yankovski prior to 2004. See Affidavit of James P. Rowley, pp. 1.

Section 5.2.3 of the Condominium Trust’s Declaration of Trust states that “any Unit Owner may at any time and from time to time change the use and designation of any room or spaces within the Unit owned by such Unit Owner[,] and may modify, remove, and install nonbearing walls lying wholly within such Unit. .. Any and all work done ... shall be done . . . pursuant to all permits required by law therefore and to plans and specifications which have been submitted to and approved in writing by the Trustees, which approval shall not be unreasonably withheld or delayed. See Affidavit of Valentin Gurvits, exhibit D, Condominium's Declaration of Trust pp. 11.

See supra note 5. See also Verified Complaint, exhibit A, Condominium’s Master Deed.

Although not binding precedent on the Massachusetts Superior Court, this Florida case is the commonly cited authority on the issue of condominium associations’ enforcement of restrictive uses.

In Basso, the Declaration of Condominium did not state a standard the board was required to use when approving or denying an owner’s alterations or changes to his or her unit. See Basso, 393 So.2d at 638. The Court determined that the “reasonableness” standard was appropriate in this category of cases. See id. at 640.

Citing Noble v. Murphy, 34 Mass.App.Ct. 452, 458-59 (1993).

The Condominium Trust notes that the Yankovskis rent out their units. See Defendants' Memorandum in Opposition to Plaintiffs’ Motion for Partial Summary Judgment pp. 7. The defendants also note the property is located near Boston College. See id. Apparently the defendants are concerned that the Yankovskis intend to rent out their units as three-bedroom units, thus potentially increasing the number of students living in the building. See id. See also Affidavit of Bonnie Keller, Affidavit of John F. Rowley.

". . . no use shall be made of any Unit except as a residence for a single family or for no more than four persons unrelated by blood or marriage . . .” See Verified Complaint, exhibit A, Master Deed §11.

“... which approval shall not be unreasonably withheld or delayed.” Condominium’s Declaration of Trust, §5.2.3.